**Opinion issued January 23, 2018**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-16-00397-CR

_____

**JIMMY LEE BUTLER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

On Appeal from the 412th District Court
Brazoria County, Texas
Trial Court Case No. 74634

---

## MEMORANDUM OPINION ON REHEARING

Jimmy Lee Butler was charged with possession of a controlled substance within 1,000 feet of an intermediate school, enhanced with two prior felony

convictions for possession of a controlled substance.[1] The jury found Butler guilty and assessed his punishment at seven years' imprisonment and a $5,000 fine.

Butler contends on appeal that the trial court erred in (1) entering judgment on the jury's guilt finding because the evidence is legally insufficient to support conviction, (2) denying his motion to suppress evidence obtained under a faulty search warrant because the supporting affidavit failed to establish probable cause and omitted material exculpatory evidence, and (3) instructing the jury to consider whether Butler was guilty as a party to the commission of the charged offense. We affirm.

## BACKGROUND

After receiving a number of citizens' complaints concerning suspicious activity around Butler's home, the City of Freeport Police Department assigned Officer M. Christopoulos, a narcotics investigator and a member of the Brazoria County Narcotics Task Force, to conduct surveillance there. Christopoulos spent close to a year watching Butler's home. He observed Butler at the home at all hours of the day. As Butler walked around the home, Christopoulos frequently saw him go in and out of the door to an enclosed patio.

---

[1] We originally issued an opinion in this case on October 31, 2017. Butler moved for rehearing. We deny his motion for rehearing, but withdraw our prior opinion and judgment issue this opinion and judgment in their stead.

Approximately two weeks before executing the affidavit supporting a warrant to search Butler's residence, Christopoulos observed Latosha Houston move into the home. Christopoulos had a confidential source, whom he had used on many occasions in the past and found to be reliable, attempt to purchase narcotics at the residence. The confidential source informed Christopoulos that he went inside the residence and saw Houston in possession of crystal methamphetamine.

Within 72 hours of preparing the affidavit, Christopoulos saw a woman, later identified as Jessica McEntire, drive to the residence, get out of the car, and have a brief exchange with Houston. Shortly thereafter, McEntire was stopped and found to possess methamphetamine.

In September 2014, a magistrate found probable cause existed to support the issuance of a search warrant for Butler's residence. In his affidavit supporting the search warrant, Christopoulos named both Butler and Houston and listed crystal methamphetamine, all narcotic paraphernalia, and any illegal drugs as items he was looking for in the search.

The morning of the next day, Christopoulos and his team executed the search warrant. Christopoulos testified that Butler was sitting on the couch when the officers entered the residence. During the investigation, deadbolt locks were found on Butler's bedroom door and on the door to the enclosed patio room. Christopoulos testified that, based on his training and experience, individuals involved in dealing

drugs or possessing contraband may want to restrict access to other people who may have access to the residence. Surveillance cameras were found in Butler's room, Houston's room, and throughout the house, with a monitor appearing to be connected to the surveillance cameras in the patio room. A digital scale was found in Butler's bedroom closet. Christopoulos testified that, based on his experience and training, similar digital scales are used to weigh cocaine. Despite Christopoulos's suspicions about the deadbolt locks, surveillance cameras, and digital scale, illegal drugs were not found in Butler's room.

Officers did, however, find contraband—cocaine—in open view in the enclosed patio room on top of mail addressed to Butler. Also in the patio room, officers found marijuana, a marijuana cigarette, a pipe for smoking marijuana, a pipe for smoking methamphetamine, and a stack of pornographic magazines containing female images. Christopoulos testified that Butler regularly accessed the patio over the year he surveilled the residence.

Undisputed evidence shows that Butler owned, lived in, and had the right to possess the residence where the cocaine was found. Investigator Christopoulos testified that his yearlong surveillance of the residence confirmed that Butler lived there. The Brazoria County property records established that Butler purchased the residence in 1999. Mail addressed to Butler was found in the residence. Butler's driver's license was found in the residence and contained the same address.

4

Prescription pill bottles labeled with Butler's name also were found throughout the residence.

## DISCUSSION

### I. Legal Sufficiency Challenge

Butler contends that a rational jury could not have found that he exercised care, custody, control, or management of the cocaine, or that he was a party to another's commission of the charged offense. We consider whether legally sufficient evidence supports these findings.

### A. Standard of Review

We review the legal sufficiency of the evidence by considering all of the evidence in the light most favorable to the jury's verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Our role is that of a due process safeguard, ensuring only the rationality of the factfinder's finding of the essential elements of the offense beyond a reasonable doubt. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). We defer to the factfinder's responsibility to fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the facts. *Williams*, 235 S.W.3d at 750. As the judge of the facts and credibility of the witnesses, the factfinder could choose to

5

believe or not to believe the witnesses, or any portion of their testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Jenkins v. State*, 870 S.W.2d 626, 628 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). An appellate court reviewing an sufficiency challenge is charged with the responsibility of ensuring that the evidence presented supports the conclusion that the defendant committed the criminal offense of which he is accused. *Williams*, 235 S.W.3d at 750. The appellate court determines whether the necessary inferences are reasonable based on the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (quoting *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)). When the record supports conflicting inferences, an appellate court presumes that the factfinder resolved the conflicts in favor of the prosecution and therefore defers to that determination. *Id.*; *see Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. An appellate court likewise defers to the factfinder's evaluation of the credibility of the evidence and weight to give the evidence. *Gonzalez v. State*, 337 S.W.3d 473, 479 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (citing *Williams*, 235 S.W.3d at 750). Direct and circumstantial evidence are treated equally: circumstantial evidence can be as probative as direct evidence and circumstantial evidence alone can be sufficient to establish guilt. *Id.* (citing *Clayton*, 235 S.W.3d at 778).

## B. Sufficient evidence affirmatively links Butler to the contraband.

### 1. Affirmative links as proof of possession

To prove unlawful possession of a controlled substance, the State must prove beyond a reasonable doubt that the defendant exercised control, custody, management, or care over the substance, and that the accused knew the substance was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005); *see* TEX. HEALTH & SAFETY CODE § 481.115(a) ("[A] person commits an offense if the person knowingly or intentionally possesses a controlled substance listed in Penalty Group 1 . . . ."). Possession of the contraband need not be exclusive and evidence that shows the accused jointly possessed the contraband with another is sufficient. S*ee McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985).

Whether the evidence is direct or circumstantial, it must establish that the accused's connection with the drug was more than just fortuitous. *Poindexter*, 153 S.W.3d at 405–06; *Wiley v. State,* 388 S.W.3d 807, 813 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd). This is the "affirmative links" rule. *Poindexter*, 153 S.W.3d at 406 (quoting *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995)). This rule is designed to protect an innocent bystander from conviction based solely upon fortuitous proximity to someone else's drugs. *Id.* It recognizes that "[w]hen the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the

7

contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband." *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981); *see also Poindexter*, 153 S.W.3d at 406.

The affirmative link can be established by additional facts and circumstances that indicate the accused's knowledge and control of the contraband. *Deshong*, 625 S.W.2d at 329. The Court of Criminal Appeals has endorsed the following list of affirmative links:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotics; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006); *Burrell v. State*, 445 S.W.3d 761, 765 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). The State need not prove all of these factors. *See James v. State*, 264 S.W.3d 215, 219 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). It is not the number of links that is dispositive, but the cumulative logical force of the evidence. *Evans*, 202 S.W.3d at

8

162; *James*, 264 S.W.3d at 219. Each case must be examined on its own facts for evidence of sufficient affirmative links. *See Roberson v. State*, 80 S.W.3d 730, 736 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). A factor that contributes to sufficiency in one case may be of little value under a different set of facts. *Id.* And, the absence of some of the factors is not evidence of innocence that weighs against the factors that are present. *James*, 264 S.W.3d at 219 (citing *Hernandez v. State*, 538 S.W.2d 127, 131 (Tex. Crim. App. 1976)).

### 2. Analysis

Butler contends that the evidence presented does not support a conclusion that he exercised care, custody, control, or management of the cocaine, either individually or as a party through Houston. Butler argues that although the house belonged to him, he shared the home with Houston, and the evidence before the jury shows that Houston exercised care, custody, control, and management over the cocaine. The State responds that, despite Butler's insistence that Houston possessed the cocaine, the evidence was sufficient to support his conviction.

The evidence establishes multiple affirmative links between Butler and the cocaine. The undisputed evidence shows that Butler owned, lived in, and had the right to possess the residence where the cocaine was found. Investigator Christopoulos testified that his yearlong surveillance of the residence confirmed that Butler lived there. Christopoulos further testified that the Brazoria County property

9

records showed that Butler purchased the residence in 1999. Butler's driver's license contained the same address. The search of the residence yielded a number of prescription pill bottles labeled with Butler's name as well as mail addressed to Butler at that residence. The only room that did not contain any drugs or drug paraphernalia was painted pink and contained personal effects that appeared to belong to a woman.

Butler was sitting inside on the couch when the officers entered the house. The cocaine was found in the enclosed patio room, which could be accessed through an outside door with a locking latch similar to that used on Butler's bedroom door. *See Torres v. State*, 466 S.W.3d 329, 333 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("[T]he contraband was enclosed as it was found in the residence, a location not generally accessible to the public.") (citing *Gregory v. State*, 159 S.W.3d 254, 260 (Tex. App.—Beaumont 2005, pet. ref'd)). The cocaine was on a table in plain view, on top of mail addressed to Butler. *See Hughes v. State*, 612 S.W.2d 581, 582 (Tex. Crim. App. 1981) (marijuana found on coffee table in enclosed patio area was in plain view); *Deshong*, 625 S.W.2d at 328, 330 (marijuana found on driver's side floorboard was in plain view once officer opened car door); *see also Douglas v. State*, 794 S.W.2d 98, 100 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd) (small amount of marijuana found on bed in one-bedroom apartment was in "open view").

In the patio room where the officers found the cocaine, they also found marijuana; a marijuana cigarette; a pipe for smoking marijuana and another for smoking methamphetamine; a water bill and mail addressed to Butler; and a stack of pornographic magazines containing female images. Christopoulos testified that digital scales like the one found in Butler's closet are used to weigh cocaine. Christopoulous saw Butler access the patio numerous times over the year he watched the residence.

We conclude that these affirmative links are sufficient to support the jury's finding that Butler possessed the contraband. *See Robles v. State*, 104 S.W.3d 649, 651–52 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (affirmative links were sufficient despite absence of drug paraphernalia, money, weapons, and lack of fingerprint analysis on bottle where contraband was found where appellant matched physical description of suspect in search warrant and was only person inside residence when officers entered; appellant dropped baseball cap that was later found to contain cocaine; appellant's W-2 was found inside residence, and only men's clothing was found in the apartment even though woman's name was on lease); *Coleman v. State*, 113 S.W.3d 496, 501 (Tex. App.—Houston [1st Dist.] 2003) (links sufficient where appellant rented and had key to house, lived alone, had utilities registered in his name; mail found in search was addressed to appellant; appellant's identification, contraband and money were found together in enclosed place; and

11

other contraband was found in other areas of house), *aff'd*, 145 S.W.3d 649 (Tex. Crim. App. 2004); *see also Stubblefield v. State*, 79 S.W.3d 171, 174–75 (Tex. App.—Texarkana 2002, pet. ref'd) (affirmative links sufficient to support jury's finding that appellant possessed contraband where appellant had been living in house for at least two weeks, was lying on couch in home when officers entered, cocaine was in plain view on nearby coffee table, and marijuana and drug paraphernalia were found throughout house, even though appellant did not appear to be under the influence, did not attempt to flee, and did not make incriminating or furtive gestures during search).

Butler contends that a rational jury could not find him guilty of the charged offense, pointing out that other factors show no link between him and the narcotics. These include (1) no evidence that he was under the influence at the time of arrest; he made no attempt to flee and made no incriminating statements or furtive gestures during the search; and (3) no contraband, currency, or weapon was found on his person. Our review, however, does not focus on the absence of particular links, but the logical force that the existing links have in establishing the elements of the offense. *See Evans*, 202 S.W.3d at 166 (holding that sufficient evidence connected appellant to care, custody, control or management of cocaine when viewing evidence "in combination and its sum total"); *see also Burrell*, 445 S.W.3d at 766 (citing *Gilbert v. State*, 874 S.W.2d 290, 298 (Tex. App.—Houston [1st

Dist.] 1994, pet. ref'd)) (rejecting appellant's argument that evidence of many affirmative links was absent and finding sufficient affirmative links where appellant lived in residence where cocaine was found, appeared concerned about being linked to that residence, made statements and took actions shortly after arrest that showed consciousness of guilt, and recognized bag that contained cocaine); *Satchell v. State*, 321 S.W.3d 127, 134 (Tex. App.— Houston [1st Dist.] 2010, pet. ref'd) ("The absence of various links does not constitute evidence of innocence to be weighed against the links present"); *Gant v. State*, 116 S.W.3d 124, 132–33 (Tex. App.—Tyler 2003, pet. ref'd) (holding evidence sufficient to support verdict where appellant argued seven links were not present and noting that number of links present is not as important as degree to which they tend to link defendant to contraband).

Viewing the evidence in the light most favorable to the jury's verdict, we hold that legally sufficient evidence connects Butler to the cocaine and, as a result, a rational factfinder could have found beyond a reasonable doubt that Butler exercised care, custody, control, or management over the cocaine knowing that it was contraband.[2] *See Hill v. State*, 755 S.W.2d 197, 201 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd) (holding that sufficient affirmative links connected

---

[2]    This holding obviates the need to address Butler's contention that legally insufficient evidence supports the jury's guilty finding under the theory that Butler was a party to Houston's conduct.

13

appellant to cocaine where appellant admitted apartment was his, crack cocaine was found in plain view in one bedroom as well as on surfaces throughout apartment, appellant was present when search was conducted, and appellant admitted to officers that he should not have had cocaine in apartment); *Watson v. State*, 861 S.W.2d 410, 415–16 (Tex. App.—Beaumont 1993, pet. ref'd) (evidence sufficient where appellant was found alone in motel room where contraband was found, contraband was found inside chest of drawers in room and was accessible to appellant, and crack pipe was in plain view, despite evidence that contraband itself was not in plain view, no strong odors were detected, appellant did not indicate consciousness of guilt, appellant was not under the influence when search occurred, no contraband found on appellant's person, appellant did not attempt to flee, and appellant did not make any self-incriminating statement); *see also Evans*, 202 S.W.3d at 166 (holding that evidence was sufficient to support jury's finding that appellant knowingly possessed cocaine where evidence showed appellant was found alone in residence, cocaine was in plain view on table, and appellant received mail at house, immediately knew why police came to residence, and was carrying $160 cash despite being unemployed).

## II.    The trial court did not err in denying Butler's motion to suppress.

Butler contends that the trial court erred in denying his motion to suppress the evidence obtained during the search of his residence because the officer's affidavit

lacked probable cause and because the affidavit omitted material exculpatory evidence. We consider each contention in turn.

### A. Probable cause supported the warrant's issuance.

We apply a bifurcated standard to review a trial court's denial of a motion to suppress. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013) (citing *Valtierra v. State*, 310 S.W.3d 442, 447–48 (Tex. Crim. App. 2010)). When determining probable cause to support the issuance of a search warrant, the trial court is constrained to reviewing the four corners of the supporting affidavit, which we "interpret . . . in a commonsensical and realistic manner, recognizing that the magistrate may draw reasonable inferences." *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). "When in doubt, we defer to all reasonable inferences that the magistrate could have made." *Id.* (quoting *Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007)); *Jones v. State*, 338 S.W.3d 725, 733 (Tex. App.—Houston [1st Dist.] 2011), *aff'd*, 364 S.W.3d 854 (Tex. Crim. App. 2012).

A search warrant may not issue unless police present an affidavit setting forth sufficient facts to show that probable cause exists for its issuance. TEX. CODE CRIM. PROC. art. 18.01(b). The affidavit must show that:

(1) a specific offense has been committed,

(2) the specifically described property or items that are to be searched for or seized constitute evidence of that offense or evidence that a particular person committed that offense, and

15

(3) the property or items constituting evidence to be searched for or seized are located at or on the particular person, place, or thing to be searched.

*Id.* art. 18.01(c). Probable cause exists if, under the totality of the circumstances, there is a "fair probability" or "substantial chance" that contraband or evidence of a crime will be found at the specified location. *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010) (citing *Illinois v. Gates*, 462 U.S. 213, 238, 243 n.13, 103 S. Ct. 2317, 2332, 2335 n.13 (1983)).

Butler claims that the warrant was defective because (1) it does not state that suspicious drug activity occurred at Butler's residence; (2) it does not state sufficient facts to make clear that the drugs found in McEntire's car were purchased during the transaction at Butler's house, which occurred shortly before McEntire was stopped; and (3) while the affidavit recites that Christopoulos received the information within 72 hours of the affidavit's execution, it does not make clear whether the confidential informant obtained the information within 72 hours of the affidavit's execution.

With respect to the timing of the confidential source information, Butler acknowledges that in *State v. McLain*, the Court of Criminal Appeals upheld the magistrate's finding of probable cause on a similarly worded affidavit even though the "statement, read literally, fails to clearly indicate exactly when the informant observed Appellee in possession of the methamphetamine . . . ." 337 S.W.3d at 273. Butler contends, however, that *McLain* is distinguishable. There, he points

16

out, the facts supporting probable cause, gleaned following an extensive investigation, included:

> (1) multiple anonymous reports that the suspect was selling and storing methamphetamine;

> (2) the officer's prior knowledge of the suspect as a methamphetamine user;

> (3) observation of traffic at the residence, particularly at night, which the officer identified as a sign of drug trafficking;

> (4) the use of multiple confidential informants, whom the officer had found reliable in the past, who provided information about how the suspect took payment and where he hid contraband at the residence.

*Id.* at 269–70.

We find the circumstances that supported probable cause in *McLain* more like the ones here than different from them. Christopoulos's affidavit summarizes his seven years' experience as a narcotics investigator. Based on his training and experience, Christopoulos averred that over the past several months, he had received information about Butler's involvement in the distribution of illegal narcotics and had previously conducted a narcotics investigation of Butler, which resulted in Butler's prior conviction for possession of a controlled substance. Christopoulos further declared that he had "personally observed Butler enter and exit the suspected residence on a daily basis," which can reasonably be read as supporting his reason to believe that methamphetamine and other contraband could be found at Butler's residence. Like the affidavit in *McLain*,

17

Christopoulos's affidavit states that the confidential informant from whom he received information concerning Butler's possession of methamphetamine had provided reliable information in the past, that the informant had assisted Christopoulos with many prior narcotics investigations, and had in the past provided information supporting search warrants that, when executed, led to the seizure of narcotics.

*McLain* also disposes of Butler's contention that the affidavit is defective because it does not specify that the confidential informant both obtained the information and provided it to Christopoulos within 72 hours of the affidavit's execution. The Court of Criminal Appeals in *McLain*, considering virtually the same language, held that, when read with the proper deference, the affidavit before it supported the magistrate's probable cause determination. *See id.* at 273. As in *McLain*, the reference in Christopoulos's affidavit to information received from the confidential source "within 72 hours of today's date" supports a reasonable inference that the informant saw narcotics inside Butler's home within that period.

We hold that the affidavit demonstrates a fair probability that a search of Butler's residence would result in the discovery of methamphetamine and other contraband. *State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012).

18

### B.     The affidavit is not invalid under *Franks v. Delaware*

Butler next contends that Christopoulos's affidavit omits material exculpatory information, thereby rendering it invalid under *Franks v. Delaware*. 438 U.S. 154, 155–56, 98 S. Ct 2674, 2676 (1978); *see Blake v. State*, 125 S.W.3d 717, 724 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (holding that *Franks* exclusionary rule applies equally to allegations of material omission as it does to those of false statements). We review a trial court's ruling on a *Franks* suppression issue under a mixed standard of review that gives almost total deference to the trial court's ruling on questions of fact that depend upon evaluations of credibility and demeanor, but reviews de novo the application of the law. *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002); *Jones*, 338 S.W.3d at 739. Though this same mixed standard of review applies to an alleged probable-cause deficiency, in deciding a *Franks* motion, the court may look beyond the four corners of the warrant affidavit and consider evidence offered by the movant "because this attack on the sufficiency of the affidavit arises from claims that it contains false statements." *Jones*, 338 S.W.3d at 739 (citing, *inter alia*, *Franks*, 438 U.S. at 155–56, 98 S. Ct. at 2676).

During surveillance, Christopoulos observed a vehicle driven by McEntire pull up to Butler's residence. McEntire parked the car and met briefly with Houston. Houston went back into the residence and McEntire drove away. Christopoulos

asked the Freeport Police Department to conduct a traffic stop on McEntire's vehicle. Freeport officers stopped McEntire and recovered a small plastic bag of crystal methamphetamine along with a pipe and syringes.

At the *Franks* hearing, Butler argued that the warrant was invalid because Christopoulos's affidavit did not mention that McEntire denied having recently purchased the drugs found in her car during the traffic stop. Butler, however, did not provide any evidence that Christopoulos intentionally or knowingly, with reckless disregard for the truth, omitted McEntire's statement from the affidavit. Christopoulos relied on information from the Freeport officers concerning the stop; he did not stop McEntire himself. And although the Freeport officers video-recorded McEntire's statement, Butler fails to show that Christopoulos ever saw the video. As a result, Butler has not met *Franks*'s requirement that Christopoulos intentionally or recklessly failed to mention McEntire's denial in the affidavit.

Butler also has failed to show that his motion to suppress would have been granted if McEntire's statement had been included in the affidavit. *See Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998). In addition to McEntire's stop, the affidavit lists numerous facts supporting probable cause. In light of these other facts, Butler has not shown that the inclusion of McEntire's statement would render the affidavit, as a whole, insufficient to show probable cause. *See Volk v. State*, Nos. 01-07-00265-CR, 01-07-00266-CR, & 01-17-00326-CR, 2008

20

WL 2854166, at *5 (Tex. App.—Houston [1st Dist.] July 24, 2008, pet. ref'd) (mem. op., not designated for publication) (citing *McKissick v. State*, 209 S.W.3d 205, 213 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd)).

## III. The charge properly instructed the jury on party liability.

Butler contends that the trial court erred by including a party liability instruction in the charge because the jury heard no evidence that he solicited, encouraged, directed, aided, or attempted to aid Houston in the possession of a controlled substance.

The State is entitled to have the jury instructed on party liability if party liability can legally apply to the charged offense and is supported by the evidence. *In re State ex rel. Weeks*, 391 S.W.3d 117, 124 (Tex. Crim. App. 2013). Under party liability, a person is criminally responsible for an offense committed by another if "acting with the intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." TEX. PENAL CODE § 7.02(a)(2). Mere presence at the scene of a crime does not make one a party to the crime. *See Thompson v. State*, 697 S.W.2d 413, 417 (Tex. Crim. App. 1985). The circumstances, however, may permit a reasonable inference that the defendant participated in a criminal offense. *Beardsley v. State*, 738 S.W.2d 681, 684 (Tex. Crim. App. 1987).

21

Here, the circumstances permit a reasonable inference that Butler assisted Houston in gaining possession of the methamphetamine.   Butler owned the residence  where Houston was seen with the methamphetamine, and he and Houston shared the  areas in the home where the drugs were found.   Because we determine that there was  no error in the jury charge, we need not consider whether there was harm.

## CONCLUSION

We affirm the judgment of the trial court.



Jane Bland
Justice

Panel consists of Justices Jennings, Bland, and Brown.  Do not publish.  TEX. R. APP. P. 47.2(b).